IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

AGNES E. NILSEN,

        Plaintiff,

vs.                                                                                    No. CIV 99-879 JP/LFG

CORRECTIONS SERVICES CORPORATION,
BOB BASS, MABEL HENDERSON,

        Defendants.

## MAGISTRATE JUDGE'S RECOMMENDED DISPOSITION ON DEFENDANTS' MOTION TO DISMISS[1]

        This is a *pro se, in forma pauperis* action pursuant to 42 U.S.C. § 1983. Plaintiff Agnes Nilsen ("Nilsen") initially filed this action as a "Petition for a Writ of Habeas Corpus," but it was construed by the Court as a civil rights action. On October 28, 1999, Plaintiff filed a "Prisoner's Civil Rights Complaint" [Doc. 13], accompanied by two attachments which will be considered as part of the complaint. (The October 28 pleading will be referenced herein as "Complaint"). Nilsen, a Montana inmate who was incarcerated for a period time at the McKinley County Adult Detention Center ("MCADC") in Gallup, New Mexico, alleges various violations of her civil rights while detained at MCADC.

        Several of the defendants who were originally named in this action, and a number of

---

[1] Within ten (10) days after a party is served with a copy of this legal analysis and recommendations that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such analysis and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the analysis and recommendations. If no objections are filed, no appellate review will be allowed.

Nilsen's claims, have been dismissed. (See Memorandum Opinion and Order [Doc. 15], filed herein on December 9, 1999). In her remaining claims, she alleges that defendants Corrections Services Corporation ("CSC"), Bob Bass ("Bass"), and Mabel Henderson ("Henderson") violated her First Amendment rights by bringing disciplinary charges against her in retaliation for her litigation activities and denying her the right to correspondence, and violated her Eighth Amendment rights by denying her needed medical care and subjecting her to potential harm from violent inmates.

The three remaining defendants filed a Motion to Dismiss [Doc. 39]. Nilsen filed both a response and a supplemental response to the motion [Docs. 48, 50]. This matter was referred to a Magistrate Judge pursuant to 28 U.S.C. § 636(b), and the Court recommends that the motion be granted in part and denied in part.

## Discussion

A constitutional claim brought by a *pro se* plaintiff under Section 1983 should not be dismissed unless the plaintiff could prove no set of facts in support of her claim that would entitle her to relief. Dunn v. White, 880 F.2d 1188, 1190 (10th Cir. 1989). Defendants move to dismiss Plaintiff's complaint on the following grounds: (1) she fails to allege personal participation by Defendants Bob Bass and Mabel Henderson; (2) the record establishes that Plaintiff was placed into segregation before her complaint was filed, and defendant's actions therefore could not have been in retaliation for this lawsuit; (3) Plaintiff has failed to show that any delay in processing her mail prejudiced her legal claim; (4) Plaintiff has failed to allege anything more than a negligent failure to provide adequate medical care and, in any case, her medical condition was not sufficiently serious so that a delay in providing medical care rose to the level of a constitutional violation; and (5) Plaintiff has not demonstrated that defendants had any knowledge that she was being threatened by another

inmate, nor does she allege that she was harmed in any way by this inmate.

    A.  Personal Involvement by Defendants Bass and Henderson

Personal participation is an essential allegation in a § 1983 claim. Mitchell v. Maynard, 80 F.3d 1433, 1441 (10th Cir. 1996). Supervisory capacity is not sufficient, by itself, to impose liability; rather, plaintiff must allege that the supervisor knew of and acquiesced in the unconstitutional behavior, or expressly or otherwise "authorized, supervised, or participated in conduct which caused the constitutional deprivation." Snell v. Tunnell, 920 F.2d 673, 700 (10th Cir. 1990). Plaintiff must allege an affirmative link between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise. Green v. Branson, 108 F.3d 1296, 1302 (10th Cir. 1997).

Mabel Henderson was named as a defendant in plaintiff's Complaint and identified as "Chief Administrator" for CSC (Attachment I to Complaint, at 2). In the voluminous pleadings submitted by Nilsen, the Court can find only one reference to Henderson, and it does not involve any of the claims remaining in this lawsuit. The Court agrees that Nilsen has failed to allege personal involvement by Henderson, and she will be dismissed from this suit.

Nilsen alleges that Defendant Bass, as an administrator at the Gallup facility, failed to hire adequate personnel, failed to properly train those he hired, and failed to "be accountable for the disregard of properly providing needed services and protections." (Attachment I to Complaint, at 4-5). The Court gives a liberal construction to Nilsen's *pro se* pleadings, Haines v. Kerner, 404 U.S. 519, 92 S. Ct. 594 (1972), and finds that, while marginal, the allegations against Bass, when tested under Rule 12(b)(6) standards, are sufficient under Tenth Circuit authority to retain him as a defendant in this case. The same may not be true at the Rule 56 stage. Indeed, Defendant may raise

his issue again with an appropriate motion for summary judgment.  Although *pro se* pleadings are to be construed liberally, Haines v. Kerner, 404 U.S. 519, 92 S. Ct.. 594 (1972),  nevertheless, a § 1983 plaintiff cannot prevail if she fails to allege and prove personal involvement by the individual responsible for the specific constitutional deprivation for which she is seeking recovery.  Mitchell v. Maynard, *supra*.

      B.  Retaliation for Filing Suit.

The prolixity of Nilsen's pleadings makes it difficult for the Court to discern the basis for many of her complaints.  However, taking her allegations as true, as the Court must in considering a motion to dismiss, it is apparent that Nilsen has stated a valid claim for retaliation.  In the October 28, 1999 Complaint, she alleges that, on October 4, 1999, she received "10 major write-ups" and was placed in segregation, "for filing litigation against the prison" (Complaint, at 2), or "for filing a law suit in court" (Attachment I to Complaint, at 8), or "I got 10 major write ups and got tossed in segregation for filing this litigation" (Attachment II to Complaint, at 1).  She also adds, "I will send you copies of all the write ups as soon as I can.  It plainly states on them, 'Because I filed suit.'  I suppose it is to scare the other inmates and me, to keep us from being critical and reporting wrongs" (Attachment II to Complaint, at 2).  This is sufficient to state a claim for retaliation based on Nilsen's exercise of her right of access to the courts.[2]

---

[2]In an addendum [Doc. 14] to the October 28 complaint, Nilsen includes copies of nine "Inmate Disciplinary Infraction" forms, all dated October 4, 1999 and all containing the notation, "Violation Number and Name: 41. Falsely accusing a staff member of committing an unlawful or unethical act." Under "Details of Incident," each form refers to a different staff member whom Nilsen allegedly "falsely accused," and each reads essentially as follows:  "On 10-1-99 CSC MCADC received a notice of attempt to sue naming [e.g.] Commissioner Becenti on the Board of Commissioners as a defendant, thus falsely accusing a staff member of committing an unlawful or unethical act."  Although the current motion is not one for summary judgment, the Court notes that these infraction forms are supportive of Nilsen's claim that the "misbehavior" for which she was written up was the fact that she had filed lawsuits against prison

Prison officials may not retaliate against or harass an inmate because of the exercise of his constitutional rights, including retaliation for filing lawsuits against prison officials, and this principle applies even where the action taken against the inmate would otherwise be permissible. Smith v. Maschner, 899 F.2d 940, 947 (10th Cir. 1990). "The right of access to the courts is basic to our system of government, and it is well established today that it is one of the fundamental rights protected by the Constitution." Id., *quoting* Nordgren v. Milliken, 762 F.2d 851, 853 (10th Cir. 1985).

To withstand dismissal, a Plaintiff must plead some facts showing a retaliatory motive. Frazier v. Dubois, 922 F.2d 560, 562 n.1 (10th Cir. 1990). While an inmate making such an allegation ordinarily must provide proof that the disciplinary action would not have taken place "but for" a retaliatory motive, Peterson v. Shanks, 149 F.3d 1140, 1144 (10th Cir. 1998), nevertheless "it may be possible in some cases to support such an ultimate fact with clear evidence which can be averred in the complaint . . [such as] direct written evidence of intent." Smith v. Maschner, at 949. This is such a case. Whether Nilsen suffered any adverse consequences as a result of the disciplinary infractions remains to be seen; however, at this point it is clear that her claim for retaliatory action is sufficient to survive defendants' motion to dismiss.

Defendant argues that Nilsen's placement in segregation could not have been in retaliation for filing suit, because she alleges that she was placed in segregation on October 4, 1999 but did not file her complaint until October 28, 1999. However, Nilsen's litigation in this matter has been ongoing since August 5, 1999, when she filed her first complaint (denominated a "petition for habeas corpus" but construed by the Court as a complaint under § 1983). In addition, Nilsen does not state in her

---

officials.

complaint (nor do the infraction forms reflect) that it was this particular litigation for which she was being punished; there may have been other lawsuits which prompted the write-ups and segregation. Although it would have been preferable for Nilsen to be more explicit, the Court finds that she has offered more than the "speculation and conclusory allegations" found inadequate in <u>Weatherall v. Scherbarth</u>, 208 F.3d 228 (Table, text in Westlaw), No. 99-1222, 2000 WL 223576, at *2 (10th Cir. Feb. 28, 2000), and has managed to state a claim on the retaliation issue. Plaintiff, of course, retains the burden of proving that the Defendants whom she names in the suit were personally involved in the retaliatory action.

  C. <u>Denial of Correspondence</u>

Nilsen makes several allegations with regard to mail issues. She claims that: (1) outgoing mail, including legal mail, was left in mailboxes for up to 30 days before being sent out; (2) that incoming legal mail was held for up to 19 days before it was given to her; (3) that she was forced to show officers her outgoing legal mail before they would allow her to send it; (4) that on one occasion, an officer opened a piece of her incoming legal mail and showed it to another inmate before giving it to Nilsen; and (5) that she was denied all mail privileges while in disciplinary segregation. (Original Complaint, denominated Petition for a Writ of Habeas Corpus [Doc. 1], at 4; Complaint, at 3; Attachment I to Complaint, at 5, 9).

Most of these allegations fail to state claims for relief under § 1983. With regard to allegations (1) through (4), involving delays and interference with both incoming and outgoing legal mail, Nilsen has failed to allege that any denial or delay in her correspondence implicated her right of access to the courts, in the sense that it prejudiced her in pursuing litigation. <u>Treff v. Galetka</u>, 74 F.3d 191, 194 (10th Cir. 1996). In allegation (3), she states that officers forced her to show them

her legal mail before allowing her to mail it; there is no allegation that they prevented the mail from going out. Allegation (4) states that, on one occasion, an officer opened a piece of her legal mail and showed it to another inmate. An isolated incident such as this, without resulting interference with her right to counsel or access to the courts, does not give rise to a constitutional violation. Smith v. Maschner, at 944. The Court takes notice that it has received numerous mailings from Nilsen between August 1999 and the present.

In allegation (5), Nilsen alleges that she was denied all mail privileges while in disciplinary segregation. Defendant claims that Nilsen was in segregation for only 20 days; Nilsen alleges at one point that she was in segregation for 31 days (Complaint, at 6); however, her pleadings indicate that she was placed in segregation on more than one occasion.

> Correspondence between a prisoner and an outsider implicates the guarantee of freedom of speech under the First Amendment and a qualified liberty interest under the Fourteenth Amendment . . . [L]imitations on a prisoner's First Amendment rights in his outgoing mail must further an important or substantial governmental interest unrelated to the suppression of expression and must be no greater than is necessary or essential to the protection of the particular governmental interest involved . . . A refusal to process any mail from a prisoner impermissibly interferes with the addressee's First and Fourteenth Amendment rights.
> [Internal punctuation omitted].

Treff, at 194, 195.

Perhaps Ms. Nilsen was in segregation for only a short period of time; perhaps, as Defendant suggests, she did not want to send mail to anyone during the time she spent in segregation; perhaps no mail arrived for her during her time in segregation; perhaps there were valid penological or security reasons for restrictions on her mail. These are not issues that can be resolved on a motion to dismiss. At this point, the Court finds that Nilsen's complaint states a valid claim for denial of all

correspondence while in segregation.

    D.  <u>Denial of Medical Treatment</u>

The Court agrees with Defendants that Nilsen's claim regarding denial of medical treatment does not rise to the level of a constitutional violation. Nilsen states that she suffers from psoriasis, a skin condition, and she alleges that jail officials delayed or prevented her from getting cream for this condition. (Original Complaint, denominated a Petition for Writ of Habeas Corpus, at 4; Complaint, at 3; Attachment II to Complaint, at 1).

Under certain conditions, denial or delay of treatment by prison medical personnel can constitute cruel and unusual punishment in violation of the Eighth Amendment. <u>Estelle v. Gamble</u>, 429 U.S. 97, 104-05, 97 S. Ct. 285, 291 (1976). "[D]eliberate indifference to a prisoner's serious illness or injury states a cause of action under §1983 . . . Deliberate indifference may be manifested by intentional denial or delay of access to medical care or intentional interference with treatment." <u>Tanner v. Garner</u>, 978 F.2d 1268 (Table, text in Westlaw), No. 92-6147, 1992 WL 314964, at *1 (10th Cir. Oct. 21, 1992), *citing* <u>Estelle v. Gamble</u>.

The "deliberate indifference" standard has two components, one objective and one subjective. <u>Wilson v. Seiter</u>, 501 U.S. 294, 111 S. Ct. 2321 (1991). Plaintiff must make a two-part showing: (1) that the medical need was "sufficiently serious," and (2) that the offending officials acted with a culpable state of mind, in that they must have known about the serious medical need and intentionally refused to provide medical care. <u>Farmer v. Brennan</u>, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977 (1994).

A "serious" medical need is generally seen as one involving a life-threatening situation, or an instance in which it is apparent that delay would exacerbate the prisoner's medical problem, or could

result in a lifelong handicap or a permanent loss. A delay in medical treatment does not violate a prisoner's constitutional rights unless she can show that the delay resulted in substantial harm. Olson v. Stotts, 9 F.3d 1475, 1477 (10th Cir. 1993); White v. Colorado, 82 F.3d 364, 366 (10th Cir. 1996); Thompson v. Hamilton, 127 F.3d 1109 (Table, text in Westlaw), No. 97-6084, 1997 WL 639320, at *1 (10th Cir. Oct. 14, 1997) ("Mr. Thompson's claim that he went untreated for 90 days, without a showing of harm, is insufficient").

"Intentional refusal" is more than a negligent diagnosis or an inadvertent failure to provide medical care; rather, Plaintiff must show a "culpable state of mind" to support his claim of denial of a constitutional right. White, at 367; Grant, at *2; Handy v. Price, 996 F.2d 1064, 1067 (10th Cir. 1993).

> [I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.' Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.

Estelle, 429 U.S. at 105-06.

Nilsen has not alleged a serious medical need, nor the requisite culpable state of mind on the part of the Defendants. She has not claimed that any delay in rendering treatment for her psoriasis resulted in substantial harm, nor is there any indication that it was apparent to defendants, at any time during her stay at the Gallup facility, that delay could result in a lifelong handicap or permanent loss. In addition, Plaintiff has failed to raise an issue of fact on the subjective element of the "deliberate indifference" test.

> Nothing about Moore's core allegations states a culpable state of mind on the part of either defendant. At most, Moore is claiming bad judgment. It is well settled that negligence, even gross negligence, does not meet the deliberate indifference standard required for a violation of the Eighth Amendment's cruel and usual punishment clause.

Moore v. Riley, 10 F.3d 810 (Table, text in Westlaw), No. 93-2074, 1993 WL 476434, at *4 (10th Cir. Nov. 19, 1993).

Nilsen has alleged, at most, negligence or inadvertence in connection with delay in receiving psoriasis cream. She has not demonstrated lasting harm, nor "the kind of immediate serious medical needs that would suggest a more critical examination of the . . . defendant's motives." Her claim for denial of medical treatment should therefore be denied.

    E.  Endangerment

Nilsen alleges that she was placed in segregation with an inmate who has violent tendencies who threatened her to smother her with a pillow, and took her food and laughed at her. She also claims that prison officials allowed an inmate, Becky Richards, to talk to her and other inmates in a threatening and intimidating manner. (Complaint, at 2, 3; Attachment I to Complaint, at 7, 8; Attachment II to Complaint, at 1). These allegations fail to state a claim for relief under § 1983.

A prisoner has the right to be reasonably protected from constant threats of violence from other inmates, and a prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment. Riddle v. Mondragon, 83 F.3d 1197, 1204 (10th Cir. 1996). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" Id., *quoting* Farmer, 114 S. Ct. at 1977.

To recover on an Eighth Amendment claim for failure to protect, however, an inmate must

10

allege and prove two elements: (1) that she is incarcerated under conditions posing a substantial risk of serous harm; and (2) that the prison official has a sufficiently culpable state of mind, indicative of deliberate indifference to the inmate's health and safety. Riddle, at 1204; Grimsley v. MacKay, 93 F.3d 676, 680 (10th Cir. 1996). Nilsen fails on the first element of this claim.

The deprivation alleged must be, objectively, "sufficiently serious" to warrant judicial intrusion. Farmer, 114 S. Ct. at 1977. "[T]he plaintiff's allegations must furnish more than a conclusory claim of being afraid and aggravated." Riddle, at 1205. In the present case, Nilsen does not allege that she was physically attacked or that any attempted attack was made; at most, she alleges that she was afraid of her cellmate and was intimidated by inmate Becky Richards. Verbal threats alone are not sufficient to state a claim under the Eighth Amendment. Barney v. Pulsipher, 143 F.3d 1299, 1310 n.11 (10th Cir. 1998).

> [To satisfy the first prong of the Farmer test], [a] prisoner must demonstrate that the deprivation was sufficiently serious and that a prison official's act or omission resulted in the denial of the minimal civilized measure of life's necessities . . . This is an objective standard. Such conditions have been found to exist where prison officials disregard repeated warnings of danger to a particular prisoner and continually refuse to make the situation safer, for example by either separating the prisoner from other inmates who previously have attacked him on multiple occasions, . . . or providing adequate safety apparatus on an obviously dangerous machine. [Internal punctuation omitted].

Grimsley, at 681. Mere exposure to maximum security inmates, without evidence of harm or threats, will not support a claim based on failure to protect. Mollie v. Ward, 106 F.3d 414 (Table, text in Westlaw), No. 96-7070, 1997 WL 22525, at *3 (10th Cir. Jan. 22, 1997).

Nilsen's allegations of endangerment do not rise to the level of "confine[ment] under conditions posing a substantial risk of serious harm," Grimsley, at 682, and this claim must be

11

dismissed.

## Recommended Disposition

1. That Defendants' Motion to Dismiss [Doc. 40] be denied with regard to:

    (a) claims against Defendant Bass,
    (b) the claim that Nilsen received infraction write-ups and was placed in segregation for exercising her right to sue corrections officials, and
    (c) the claim that Nilsen was denied all right of correspondence while in segregation;

2. That the motion be granted with respect to all other claims; and

3. That claims against Defendant Henderson be dismissed with prejudice.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge