IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

AGNES E. NILSEN,

        Plaintiff,

vs.                            No. CIV 99-879 JP/LFG

CORRECTIONS SERVICES CORPORATION
and BOB BASS,

        Defendants.

**MAGISTRATE JUDGE'S RECOMMENDED DISPOSITION
ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**[1]

THIS MATTER comes before the Court on Defendants' Motion for Summary Judgment [Doc. 72], Plaintiff's Motion for Appointment of Counsel [Doc. 71], and Plaintiff's Motion for Trial Date [Doc. 68]. For the reasons given below, the Court recommends that Defendants' summary judgment motion be granted and Plaintiff's motions be denied.

This is a *pro se, in forma pauperis* action pursuant to 42 U.S.C. § 1983. In her complaint and supplements thereto, Plaintiff Agnes Nilsen ("Nilsen") made numerous allegations of violations of her civil rights by officials at the McKinley County Adult Detention Center (MCADC), where she was incarcerated for a period of time under an arrangement with the state of Montana, where she is currently incarcerated. Several of the defendants who were originally named in this action, and a

_____

[1]Within ten (10) days after a party is served with a copy of this legal analysis and recommendations that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such analysis and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the analysis and recommendations. If no objections are filed, no appellate review will be allowed.

number of Nilsen's original claims, have been dismissed.  In her remaining claims, Nilsen alleges that defendants Corrections Services Corporation ("CSC") and Bob Bass ("Bass") violated her civil rights in the following ways:  (1) they brought disciplinary charges against her in retaliation for her litigation activities, in violation of the First Amendment; (2) they denied her the right to any correspondence while she was in segregation, in violation of the First Amendment; and (3) they failed to protect her from a violent sexual assault by other inmates, in violation of the Eighth Amendment.

Defendants move for summary judgment, alleging there is no genuine issue of material fact with regard to any of these claims.  The Court agrees.

## Procedural Background

Nilsen's filings in this case have been voluminous.  On August 5, 1999, she filed an initial pleading labeled "Petition for a Writ of Habeas Corpus on a Disciplinary Proceeding" [Doc. 1], naming CSC and Bob Bass as defendants, along with four other persons, and including a memorandum [Doc. 3] setting forth factual support for her complaint.  Her primary complaint at this point was that, on April 28, 1999, she was cited for a major disciplinary infraction without due process and was placed in segregation for 20 days with no means of communicating with the Courts or her family.  She further alleged that she was denied medication for her skin condition, which she described as psoriasis over 90 per cent of her body.  As relief, she sought the expungement of her disciplinary record and damages.

The Court construed Nilsen's pleading as a civil rights complaint and ordered her to cure deficiencies with regard to her request for *in forma pauperis* status [Doc. 4].  On August 25, 1999, Nilsen filed a "Response to Cure Deficiency," in which she stated that "A 1983 Civil Rights Action will be filed at a later date, quite possibly a class action" [Doc. 6 at 2], but continued to assert that

habeas corpus was the correct procedure for redress of her grievances.  On August 31, 1999, the Court issued an Order to Show Cause, holding that Nilsen's original pleading was indeed a civil rights action and ordering her to submit a proper *in forma pauperis* motion [Doc. 7].

On September 16, 1999, Nilsen requested an extension of time to respond to the show cause order, and filed a Motion for Issue of Court Order [Doc. 9], in which she alleged that she could not get documents notarized and asked the Court to order corrections officials to provide notary services. The Court granted her an extension of time and denied the motion for an order requiring notary services, noting that Plaintiff was not being prevented from filing papers with the Court [Doc. 10].

On September 15, 1999, Nilsen mailed a letter to the Clerk of Court [Doc. 12], which was docketed as a Supplement to the original complaint.  In this document, Nilsen alleged that, because she filed suit, she was given ten major infractions and was put in segregation where a violent and abusive inmate deprived her of sleep, and took her food and laughed about it.  On October 28, 1999, she filed a 20-page amended complaint [Doc. 13], naming new defendants and alleging various violations of her constitutional rights, including the allegations already made that she was given ten "major write ups" and put in segregation with a violent inmate.  She also alleged that she was denied meals and communication with her family, and that sometimes periods of 12-24 hours would elapse before a guard came by to check on her.  She further alleged that she was denied access to the courts in that her legal mail was not sent out in a timely manner, that she was denied all mail privileges while in segregation, and further that she was denied due process in prison disciplinary proceedings and deprived of medication for her skin disease, showers and clean clothes, out-of-cell time, and law library privileges.  She stated further that the officers at MCADC routinely work double and triple shifts with only 2-3 hours of sleep, that there have been many escapes, and that cells are checked only

3

every 3-4 hours.

In an addendum to the amended complaint, docketed as part of the complaint, Nilsen made further allegations, in addition to repeating several of the claims already made.  She cited "disparity in discipline, medical treatment, the way mail is handled, lack of maintenance, safety issues, tracking of inmate funds, lack of viable job training programs, denial of access to the courts," and other complaints listed in an attachment.  She claimed that her medication refills were not timely and that drugs were given out "in a hap-hazard manner."  Without giving specifics, she generally cited the existence of "overcrowding, safety, rehabilitation, hardships . . .  imposed on families."  Other allegations include failure of a software contractor to train corrections employees in the use of their services which caused inaccuracies in inmate accounts, preferential treatment given to inmate Becky Richards, failure to hire a sufficient number of officers, failure to provide inmates with media contact, lack of newspapers and telephone books, lack of attorney contact, failure to provide a healthy diet, exposure of inmates to toxic substances, and elder abuse.

On December 2, 1999, Nilsen filed a motion to supplement her complaint [Doc. 14].  She attached to the motion a five-page document reiterating her previous complaints and included copies of nine infraction reports, numerous grievances she had filed with corrections officials, and copies of documents she attempted to file with the state courts.  The Court denied this motion as moot since Nilsen had already filed an amended complaint and, in keeping with the principle of liberal treatment of *pro se* pleadings, <u>Haines v. Kerner</u>, 404 U.S. 519, 520, 92 S. Ct. 594, 596 (1972), held that the additional documents submitted with Doc. 14 would be considered part of the amended complaint. [Doc. 47 at 2].

On December 9, 1999, District Judge James A. Parker conducted a *sua sponte* review under

28 U.S.C. § 1915(e)(2) and Fed. R. Civ. P. 12(b)(6), and dismissed several of the claims and defendants.  Defendants CSC and Bass, along with Mabel Henderson, were retained as defendants; the remaining claims included retaliation by means of infraction reports for the exercise of her right to sue, denial of correspondence, and claims under the Eighth Amendment for denial of medical treatment and endangerment.  [Docs. 15 and 16].  Nilsen's motion [Doc. 24] for reconsideration of this order was denied.  [Doc. 44].

Also on December 9, Nilsen again moved to supplement her complaint, alleging that she was placed in lockdown status for a second time, with no warning and no due process.  She was told that she had been placed in protective custody, but she characterized the lockdown as punitive.  She alleged further that she was placed in a cell with an emotionally unstable, violent, drug abusing inmate.  [Doc. 18].  On December 13, 1999, Nilsen moved for summary judgment in her favor [Doc. 19], arguing that the facts she had presented to the Court entitled her to judgment as a matter of law.

On December 16, 1999, she filed another motion to supplement her complaint, alleging intolerable living conditions consisting of "noise, idleness, fear, violence, absence or/and inadequacy of programs, of classification, education, vocational training, or other constructive activity . . ." [Doc. 21 at 2].  She attached to this motion statements from two other Montana inmates housed at MCADC and included additional allegations on her own behalf, asserting that she was housed with women who sleep during the day and make noise at night, and that "CSC has no structure for inmates to observe regular hours, or headphone rules for radios and stereos," causing "an inordinate amount of violence . . .."  This motion was denied for failure to show the absence of a genuine issue of material fact.  [Doc. 44].

Nilsen was transferred back to Montana on December 18, 1999 [Doc. 22].  On April 10,

2000, she filed a "Motion to Issue Contempt of Court Charge, Arrest and Fine" [Doc. 37], seeking

to have the warden at the Montana State Women's Prison held in contempt of court for failing to

carry out unspecified court orders.  The warden had earlier been dismissed from the case, and this

motion was denied as moot.   [Doc. 44].   On April 12, 2000, counsel for the three remaining

defendants entered an appearance and moved to dismiss the complaint.  [Doc. 39].   On April 25,

Nilsen moved to amend the complaint, to certify a class action, and for appointment of counsel.

[Doc. 42].  The Court denied this motion on May 23 [Doc. 47] but granted Nilsen's request for an

extension of time to respond to Defendants' motion to dismiss.  Nilsen's response to the motion to

dismiss came in the form of a "Petition for a Writ of Habeas Corpus Ad Testificandum" [Doc. 49]

and a "Response to Answer from Defendants Attorney, and Response to Memorandum Jury Trial

Demanded" [Doc. 50], both filed on June 5, 2000.  The Motion for Writ of Habeas Corpus Ad

Testificandum was denied as premature on June 8.  [Doc. 51].

In response to an order to cure deficiencies involving failure to make partial payments toward

the filing fee and to provide financial information, Nilsen filed on July 3, 2000 a second "Motion to

Issue a Contempt of Court Order and Fine" [Doc. 53], alleging that the warden and financial officer

at the Montana prison refused to sign financial documents for her.  This motion was denied, but the

Court ordered Plaintiff to submit monthly post-filing financial certificates according to personal

knowledge [Doc. 56].

On July 24, 2000, the Magistrate Judge filed Proposed Findings and Recommended

Disposition [Doc. 54] on Defendants' motion to dismiss, recommending that Defendant Henderson

be dismissed from the case and that Nilsen's claims for denial of medical treatment and endangerment

from other inmates also be dismissed.  On August 3, 2000, Nilsen filed objections [Doc. 55] to the

Magistrate's proposed disposition.  In these objections, she raised for the first time allegations of endangerment of a more serious nature, involving actual physical harm.  She stated:

> Plaintiff asks this question of the court.  If a 59 year old woman has her hands and feet tied with a hair dryer cord, and has the splintered handle of a plunger rammed up her vagina repeatedly by two mentally unstable, strong, violent, inmates, does that place her in danger?  This 59 year old inmate says "it does."  Yes, it is documented, yes, she suffers for it even now, and yes, because of the damage it done, she uses medication even now for it.  Yes, it is and will be attested to by Corrections Services personnel, and records.  Plaintiff asks this court, does being assaulted by an inmate with a pair of scissors, constitute danger.

[Doc. 55 at 3].  On August 29, 2000, the District Judge adopted the Magistrate Judge's proposed disposition, excepting the new Eighth Amendment claim involving violent sexual assault.  The Court noted:

> Nilsen did not bring these allegations to the attention of the Court until she filed her objections.  She describes these incidents in such a way that it is unclear whether Nilsen is alleging an assault against her personally, or against a different female inmate.  It is further unclear whether the alleged incidents took place in Montana, or in New Mexico.  She gives no explanation why these allegations were not included in her original complaint, nor in any other of the many documents which she has filed with this Court.
>
>     Assuming Nilsen is alleging that she was herself the victim of a violent sexual assault as described, and assuming the alleged assault took place in New Mexico and was ignored by Defendant Bass, these allegations would satisfy both prongs of the Eighth Amendment test.  Because the Court liberally construes pro se pleadings, and because of the serious nature of these new allegations, Nilsen's endangerment claim will not be dismissed, and the allegations will be included in the Court's order for a Martinez report.

[Doc. 57 at 2].  On September 5, 2000, Nilsen filed a "Motion for Request of Information" [Doc. 58], in response to the September 29 order, in which she asked for more information on Martinez Reports and stated that both the sexual assault and the incident with the scissors occurred in New Mexico.

7

She stated further in this document that the reason she didn't include this in her original complaint was because it was very painful for her, and she had hoped that her other allegations would be sufficient to bring the case to trial.  She also said that she held back this information out of fear that her husband of 37 years would divorce her if he found out about this assault and that indeed, he did divorce her when he learned of it; however, she supplied no documentation of this divorce.

On September 19, 2000, the Court granted Nilsen's request for information about Martinez Reports, and ordered Defendants to submit such a report, addressing certain specified matters.  [doc. 60].  The Martinez Report was filed on November 20, 2000.  [Doc. 63].  Nilsen filed a Response, a Motion for Trial Date, and a Motion for Appointment of Counsel [Docs. 68 and 71].  On March 9, 2001, Defendants filed a Motion for Summary Judgment [Doc. 72].

The latter three motions are currently before the Court for decision.  The Court addresses first Defendants' Motion for Summary Judgment, discussing separately each of Nilsen's remaining three claims for relief.

### Standards for Summary Judgment

A summary judgment proceeding is appropriately used to cut through the allegations of the pleadings and to determine if there is a triable issue.  Summary judgment will be granted when the moving party can demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S. Ct. 1598 (1970); Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co., 52 F.3d 1522, 1527 (10th Cir. 1995).  The court does not decide the issues of fact, but rather determines if there is an issue that must be resolved at trial.

Summary judgment is appropriate only if there is insufficient evidence favoring the nonmoving

party for a reasonable jury to return a verdict for that party.  Anderson v. Liberty Lobby, 477 U.S. 242, 249, 106 S. Ct. 2505, 2511 (1986).  Thus, the court's inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id., at 251-52, 106 S. Ct. at 2512.  The court, in considering a motion for summary judgment, construes the factual record and the reasonable inferences therefrom in the light most favorable to the party opposing the motion.  Perry v. Woodward, 199 F.3d 1126, 1131 (10th Cir. 1999), cert. denied, 529 U.S. 1110, 120 S. Ct. 1964 (2000).

## Retaliation for Litigation Activities

Defendants move for summary judgment on Nilsen's claim that they violated her First Amendment rights by bringing disciplinary charges against her in retaliation for her litigation activities.   It is clear that prison officials may not retaliate against an inmate because of the inmate's exercise of her right of access to the courts.  Smith v. Maschner, 899 F.2d 940, 947 (10th Cir. 1990). This is true, even if the action taken in retaliation would otherwise be lawful.  Id., at 948.  However,

> an inmate is not inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he has engaged in protected activity.  Accordingly, a plaintiff "must prove that 'but for' the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place.

Peterson v. Shanks, 149 F.3d 1140, 1144 (10th Cir. 1998).

In connection with her retaliation claim, Nilsen has provided copies of nine infraction reports, all dated October 4, 1999 (filed as attachments to her December 2, 1999 Motion to Supplement Complaint, Doc. 14), and Defendants have supplied copies of ten such reports (Doc. 63, Exs. 1-10). Each of these infraction reports contains a "Detail of Incident" section, in which Nilsen is charged with having filed suit and thereby "falsely accusing a staff member of committing an unlawful or unethical

9

act." Each infraction report names a different official, and Nilsen thus received ten separate write-ups.

It is clear that these write-ups were done as a result of Nilsen's litigation activity against corrections officials. However, all ten of disciplinary infractions were dismissed (Doc. 63, Exs. 1-10), and no disciplinary action or other punishment was undertaken against Nilsen as a result of the reports. Nilsen claims that she was placed in segregation as punishment for these infractions; however, Defendant contends that Nilsen was segregated in October 1999 for her own protection. Documentation supplied with the Martinez Report indicates that, following Nilsen's notification that she feared certain other inmates in her housing pod due to the write-ups she received, Nilsen was placed in protective custody status within her housing unit from October 5 to November 30, 1999, for her personal safety awaiting return transport to the Montana Department of Corrections. (Martinez Report at 2-3, and Ex. 17A thereto).

Nilsen has presented nothing to the Court to establish that she was punished in any way as a result of these infraction reports. Defendants state that the reports were written by a staff member and, upon review by a supervisor, were dismissed with no action taken against Nilsen. There is nothing to show that she was segregated in October 1999 for reasons other than her own protection; indeed, she requested that she be protected from other inmates who were threatening her.

Although the Court does not condone the writing of infraction reports against an inmate because of her litigation activity, Nilsen had previously been found guilty in April 1999 of violating prison regulations prohibiting false accusations of unlawful or unethical conduct against staff members, and the October 1999 infraction reports, which were based on similar charges, appear to have been an overreaction by a staff member, which was overridden by a supervisor with no adverse

consequences to Nilsen.   (Martinez Report at 3, and Exs. 12, 13 and 17 thereto).[2]   Although the infraction reports based on Nilsen's litigative activities were improper, they did not result in any damage to Nilsen and are thus not actionable in this suit.   Summary judgment is appropriate on this claim.

## Right to Correspondence

Defendants also seek summary judgment on Nilsen's claim that the Defendants violated her First Amendment rights by denying her all mail privileges while she was in segregation. "Correspondence between a prisoner and an outsider implicates the guarantee of freedom of speech under the First Amendment and a qualified liberty interest under the Fourteenth Amendment . . .   A refusal to process any mail from a prisoner impermissibly interferes with" these rights.   Treff v. Galetka, 74 F.3d 191, 194-95 (10th Cir. 1996).

Nilsen's claim that she was denied all mail privileges while in segregation is refuted by the mail logs provided with Defendants' Martinez Report.   These logs show that, during Nilsen's first period of segregation from April 28 to May 18, 1999, which resulted from her false accusations against the prison chaplain, she sent out seven pieces of mail and received six pieces; during the second period of segregation, between October 5 and November 30, 1999, she sent or received 58 pieces of mail. (Martinez Report, Ex. 18).   Thus, during two periods of segregation, Nilsen sent or received more than 70 pieces of mail.   In addition, the District Court filed pleadings in this case from Nilsen on October 15 and 28, and December 2, 1999, which were presumably mailed out during Nilsen's

---

[2]In the April 1999 incident, Nilsen was charged with having falsely accused prison chaplain Monty Stratton of having sexual relations with another inmate.  Following a disciplinary hearing, Nilsen was found guilty of this infraction and received 20 days in disciplinary segregation as a sanction.  (Exs. 17, 19A to Martinez Report).  Nilsen later admitted that she had passed along unsubstantiated rumors about the chaplain.  (Ex. 19B to Martinez Report).

second period of incarceration.  A court may take judicial notice of its own records.  <u>St. Louis Baptist</u>

<u>Temple, Inc. v. FDIC</u>, 605 F.2d 1169 (10th Cir. 1979).

Nilsen's only response to this evidence is that Defendants are lying and have falsified the mail

logs.  (Plaintiff's Response to Martinez Report and Request [Doc. 68], and Plaintiff's Response to

Defendants' Motion to Issue Summary Judgment [Doc. 75].  This is not sufficient to avoid summary

judgment as, once the moving party meets its burden, the party opposing the motion must come

forward with specific facts, supported by admissible evidence, which demonstrate the presence of a

genuine issue for trial.  <u>Anderson</u>, 477 U.S. at 248-49; <u>Biester v. Midwest Health Servs, Inc.</u>, 77 F.3d

1264, 1266 (10th Cir. 1996).  "The mere existence of a scintilla of evidence in support of the

nonmoving party's position is insufficient to create a dispute of fact that is 'genuine.'"  <u>Lawnmaster</u>

<u>v. Ward</u>, 125 F.3d 1341, 1347 (10th Cir. 1997).  Summary judgment is appropriate only if there not

sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict for that

party.  <u>Anderson</u>, 477 U.S. at 249.  Thus, the court's inquiry is "whether the evidence presents a

sufficient disagreement to require submission to a jury or whether it is so one-sided that one party

must prevail as a matter of law."  <u>Id.</u>, at 251-52.

Under these standards, the Court finds that summary judgment is appropriate on Nilsen's

claim that she was unable to send or receive mail during her periods of segregation at MCADC.

### **Failure to Protect**

Finally, Defendants seek summary judgment on Nilsen's allegation that Defendants failed to

protect her from physical and sexual assault by other inmates.  A prisoner has the right to be

reasonably protected from constant threats of violence from other inmates, and a prison official's

deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth

Amendment.  Riddle v. Mondragon, 83 F.3d 1197, 1204 (10th Cir. 1996).  "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'"  Id., quoting Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977 (1994).

To recover on an Eighth Amendment claim for failure to protect, an inmate must allege and prove two elements:  (1) that she is incarcerated under conditions posing a substantial risk of serious harm; and (2) that the prison official has a sufficiently culpable state of mind, indicative of deliberate indifference to the inmate's health and safety.  Riddle, at 1204; Grimsley v. MacKay, 93 F.3d 676, 680 (10th Cir. 1996).  The deprivation alleged must be, objectively, "sufficiently serious" to warrant judicial intrusion.  Farmer, 511 U.S. at 834.

In her initial pleadings, Nilsen alleged that other inmates verbally threatened her, stole her food and laughed at her, and kept her awake at night.  The Magistrate Judge found that these allegations did not pose a "substantial risk of serious harm" so as to rise to the level of a constitutional violation under Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977 (1994), and recommended that Nilsen's endangerment claim be dismissed.  [Doc. 54 at 10-12].  As noted above, it was only in objecting to the Proposed Findings and Recommended Disposition that Nilsen raised allegations that she had been tied up and violently sexually assaulted by other inmates, and that she had been assaulted with scissors.

In the order for a Martinez Report, Defendants were asked to give a complete description and provide documentation of these incidents, and to state whether any MCADC employees were disciplined for failing to protect Nilsen from such assaults.  Defendants responded that no such incidents were ever reported to them, either by Nilsen or by corrections staff, and they are thus unable to give a description of the circumstances of such incidents or to provide documentation in the form

of incident reports or reports of disciplinary proceedings against any employee, as there is no record that any such assaults occurred.  (Martinez Report, at 3-4).

Defendants were also directed by the Court to state whether Nilsen had been threatened at any time during her stay at MCADC and, if so, to give details of the incident(s) and to describe the steps taken by corrections officials to protect her.  In the Martinez Report and accompanying documentation, Defendants provide evidence that Nilsen complained of threats by inmate Doone on April 21, 1999, as a result of which she was interviewed by Defendant Bass on April 22 and was offered protective custody but that she declined the offer.  (Martinez Report at 4, and Exs. 19, 19A, 19B).  In addition, Nilsen complained that she was threatened on October 11, 1999 by inmate Wells and, as a result, Wells was removed from Nilsen's cell.  (Martinez Report at 4, and Exs. 20 and 21).

In response, Nilsen states that the incident reports, in all probability, were never retained by corrections officials or else were removed from the files.  [Doc. 68 at 2].  These bare allegations do not satisfy Nilsen's burden as the party opposing the summary judgment.  Anderson, 477 U.S. at 249; Lawnmaster, 125 F.3d at 1347.  There is no evidence that the alleged sexual assault, or the assault with scissors, ever occurred.  Nilsen did not allege these incidents in her initial complaint but raised the issue of actual physical harm only after the Magistrate Judge recommended dismissal of her claim of endangerment.  Nilsen has not supplied copies of any grievance which she filed in connection with either of these alleged incidents, and she has identified no perpetrators or witnesses.  There is no incident report and no medical reports on the record.  In short, there is no genuine issue of material fact, and summary  judgment is appropriate on this claim.

14

**<u>Recommended Disposition</u>**

That Defendants' Motion for Summary Judgment [Doc. 72] be granted, and that Plaintiff's

Motion for Appointment of Counsel [Doc. 71] and Motion for Trial Date [Doc. 68] be denied as

moot.


_____
Lorenzo F. Garcia
United States Magistrate Judge

15